By the Court.—Speir, J.
The first proposition advanced by the appellants is that assuming the theory of the plaintiff’s case to be that Ralston and Roberts and wife were conspirators, the order of proof was imperative, that some evidence tending to show pre-concert of action must be given.
In other words that the testimony showing that *110 Ralston made the application to the plaintiffs for the loan of the money claimed in the complaint upon these bonds as security, and that to inspire confidence he presented a forged letter of introduction, and their evidence as to his declarations made in and about obtaining the loan was inadmissible without first giving evidence of the conspiracy, on the ground that it was an independent act of fraud not necessarily connected with the uttering of the bonds, and tending to prejudice the jury.
It is important to see what part Mr. Ralston took in this enterprise. He had an office at No 58 Broadway, room 11, in this city, and was or pretended to be a broker. He was unknown to the president of plaintiff’s company, with whom he conducted the negotiation, and presented a forged letter of introduction from George A. Fellows, who was a trustee in plaintiff’s company. In two or three days thereafter he obtained the loan on these spurious bonds. He who was known as Charles Ralston at 58 Broadway boarded at the house of a respectable family by the name of Thomas, at No. 257 West Fourteenth street in June, 1873, and had also resided with this family at No. 312 West Fourteenth street, and was known at both places by this family and other boarders as Walter Stewart. The defen- ' dants Mr. and Mrs. Gleason visited him there. Stewart (Ralston) left Mr. Thomas’s house after obtaining the money from the plaintiffs, in June, 1873, and that was the last they saw of him. Stewart’s conduct was such, while at Mr. Thomas’s house, that his real character was not known or suspected, and when they first heard of the report of his fraudulent transactions, Thomas called upon the defendant, Gleason, whom he knew only as a friend of Stewart, and was astonished when they denied knowing him, or that they had ever been at Thomas’s places of residence. Ralston’s bank book on the Fourth National Bank was' found in the box of *111 defendant Valentine Grleason, at the New York Safe Deposit Company. This bank was the one in which Ralston kept his accounts and in which the plaintiff’s check was deposited by him. No explanation was offered on the trial of the facts disclosed by this testimony.
Looking at the complaint it would seem that the testimony of the president of the plaintiff’s company relating to the application for the loan, the security upon which it was made, the person negotiating it, and all the circumstances under which it was actually completed, would be the first step to be taken on the part of the prosecution. The action was for the recovery of this money obtained fraudulently upon fictitious and counterfeit bonds. The fact of the loan being made was the first thing to be established. The theory of the plaintiff’s case is not that the defendant Roberts was alone responsible for the uttering of the bonds. The fact clearly appears that Ralston was the defendant who first put them on the market. A man utters a false note or bond who gives it in payment or security knowing it to be false. This was what Ralston did. He presented a forged letter of introduction purporting to have been written by one of the trustees of the plaintiff’s company, and upon it was enabled to secure the confidence of the plaintiffs in obtaining the money and receiving these worthless bonds as security for the repayment. This testimony of the president therefore directly proved that Ralston took the first step in the uttering. Prior to the time of making this loan, it appears that Stewart (Ralston) was interviewed by Mrs. Pettis for the purpose of ascertaining whether the defendants, Roberts and Grleason, were going to dispose of these bonds. That he stated “they had changed their minds somewhat about sending them to Europe, or how they were to put them on the market.” He said, “Tell your husband he thought they were *112 going to get a loan on them, and the balance they would send to some of the Western States.”
As a general rule a foundation must first be laid, by proof, sufficient in the opinion of the judge to establish prima fade the fact of conspiracy between the parties to be laid before the jury. The connection of the individuals in the unlawful enterprise being thus shown, every act and declaration of each member of the confederacy in pursuance of the original concerted plan, is in contemplation of law the act and declaration of them all (1 Greenl. Ev. [Redfield’s Ed.] § 111). The facts thus disclosed at the commencement of the trial on the examination of the first witness were more than prima facie, and did not rest even in the discretion of the court. It was not possible that the jury could be misled to infer itself of the fact of conspiracy, from the declaration of a stranger. Ralston was no stranger in the design and plan to defraud. He was the leading conspirator. This clearly takes the case out of the rule insisted upon by defendant’s counsel, that the obtaining the money by Ralston, and the introduction of the forged letter, were independent acts of fraud unconnected with the conspiracy of Roberts with Ralston.
It is claimed that the testimony of S. Pettis was improperly admitted.
At the time this testimony was taken under commission in Massachusetts, Pettis was serving oat his term of imprisonment for the crime of forgery. He was tried and convicted in Massachusetts, and the evidence was objected to upon the ground that the statute of this State disqualifies him from testifying.
By the general statutes of Massachusetts, “Ho person shall be excluded by reason of conviction, &c., from giving evidence either in person or by deposition, &c.”
Our statute provides, “Ho person sentenced upon a conviction for felony shall be competent to testify in any cause, matter or proceeding, civil or criminal, un *113 less he be pardoned by the governor or the -legislature, except in the cases especially provided by law.”
The provision of the statute is penal, and must be strictly construed. The conviction referred to must be within this State. It is well settled that penal laws of one State do not extend into another. Personal disqualifications not arising from the positive law of the country, and especially such as are of a penal nature, are strictly territorial, and cannot be enforced in any country other than that in which they originated (Story on Conflict of Laws, §§ 91, 92, 620-625; 1 Greenl. on Ev. § 376). The case is decided in 17 Mass. 513, Commonwealth v. Green. The court say that the conviction of an infamous crime in a foreign country or in any other of the United States, does not render the subject of such conviction an incompetent witness in the courts of that State. This decision was made before any special statute was passed, and was made upon common law principles (see Cole v. Cole, 50 How. Pr. 60).
The objection to the 13th interrogatory, under which the 18th, 19th, 20th, 27th-35th interrogatories were answered, does not appear to be well taken. The question was certainly proper, as it asked for the knowledge which the witness had about the getting up of the said forged bonds. The 25th interrogatory, calling for the financial condition of the defendants or either of them, prior to the time said bonds were prepared and issued, was pertinent. The action was for recovery of this money obtained from the plaintiffs by the complicity and pre-concerted action of all the defendants, and which money had been attached. It was an important question, therefore, for the jury to know what means they had, if any, when they got the bonds up and issued them.
I fail to see any grounds for the nonsuit. The court did charge that the jury might sever in their ver *114 diet: that -if they believed the evidence established participation by some of the defendants only, their verdict would be against them and in favor of the others. This was as far as the casé would warrant the judge in going. He told them they must discriminate in the case of Corp, Mrs. Gleason and Mrs. Roberts.
I have carefully looked into the several refusals to charge, and to the direct charge, and am of the opinion that all the objections specified by the defendant’s counsel on this appeal should be overruled.
It appears to me that the case has been fairly tried upon the evidence requisite to a correct result; and although some evidence of minor importance may have been erroneously admitted, it is manifest that its rejection could not have changed the result.
The judgment and order must be affirmed.
Curtis, Ch. J., concurred.